The next case today is Boston Executive Helicopters, LLC v. Francis T. Maguire, et al., Appeal No. 21-1002. Attorney Loeffler, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, my name is Eric Loeffler and I represent the Plaintiff Appellant, Boston Executive Helicopters, LLC. At the outset, with the Court's permission, I'd like to request to reserve one minute for rebuttal. Mr. Loeffler, your briefs tell a vivid picture of what you represent to be unfairness to your clients, but please do not spend your oral argument time on that. Can we get to the issues you have raised on appeal? Yes, I appreciate that, Your Honor. As you can tell from the record, it's been a very contentious relationship from the beginning. As the Court is aware, there was a settlement agreement entered into between my client and the defendant appellees that required certain obligations of, for sake of convenience, I'll refer to them as the Norwood, to grant my client lease space for FBO operations to support removal of taxiway markings at the airport, to disclose certain communications. That was through discovery or public records requests. Also, to provide my client with an opportunity to participate in meetings with the FAA over a corrective action plan that Norwood was required to submit to the FAA, resulting from a negative Part 16 ruling against the town, retaliation against my client and their efforts to become an FBO. With respect to the ramp space, it is BEH's contention that the District Court erred in using the dictionary definition of non-exclusive to interpret the settlement agreement, ignoring the definition and meaning ascribed by the town's lawyers and federal regulatory context underlying the meaning of that phrase. Again, it's BEH's contention that the District Court further erred in denying BEH's motion where there was clear evidence that they had breached the settlement agreement by intentionally and materially undermining BEH's petition to the FAA requesting removal of the TOFA markings and the communications provision and the obligation to have BEH attend correction action plan meetings with the FAA. With respect to the lease space, Your Honor, I'll get right to it. It is, again, our contention that the District Court declined to afford the word non-exclusive as it appeared in the settlement agreement, its technical or contextual meaning, and instead used the limited to only one person or organizations or to one group or people of organizations and finding that the language did not support BEH's demand for a lease that was free of encumbrances. The Court's reliance on an isolated dictionary definition to the exclusion of context is the first and most important error in the District Court's reasoning. For example, as we've outlined in our papers, the Supreme Court stated that where Congress has used technical meanings or terms of art, it's proper to explain them by reference to the art or science with which they are appropriate. And it's not just limited to the legal context or legal terms of art but also extends to non-legal terms of art as they might be used in particular industries. As we outlined in our papers in the present context, I believe, Judge, yeah. Suppose we read the contract so that non-exclusive means what you say it means. How far does that get you? What does that get you? That gets us to the point where BEH's contention is that they were supposed to be giving a certain amount of space free of encumbrances or claims by third parties. That's where it gets us, Your Honor. And instead, what the District Court did was suggest that the time was not obligated to provide BEH with a lease that was free of encumbrances or claimed rights by third parties. Four minutes. So the essence of your argument here is that the term non-exclusive for aviation purposes means essentially when one company can't have a monopoly at the airport. That is precisely what it means. If you read through our papers, we've outlined that phrase was placed into operation by the airport because of the federal grant assurances that the town is obligated to the FAA. It is to prevent a monopoly at the airport for someone providing services at the airport. Counsel, I'm a little surprised by that answer. That may be the thrust of your argument, but monopoly is really quite different than allowing an easement. And I don't know that the allowance of an easement establishes monopoly power by anybody. Isn't that rather a large leap? I perhaps I wasn't clear in my answer, Your Honor. Our position is that the interpretation of that phrase relates to the obligation of the airport not to give any one entity or person exclusive rights to operate at the airport and does not relate to whether property is going to be encumbered or third parties will have access rights to that property. But if what you've just argued is there are two different points being made, the agreement then is silent on the question of easements. There is no language in the agreement precluding easements being used. So I'm not certain that advances your cause. Well, this is where we sort of get into the argument that the district court should have considered the facts and circumstances leading up to the execution of the settlement agreement, as the court's probably aware. There was an initial settlement agreement entered into just 18. That settlement effectively fell apart because the town wanted to insert an easement onto the ramp space, which led to a motion to enforce and ultimately hearings before Judge Stearns. And it was made very clear on the last day of the hearing before Judge Stearns, I think from one of the attorneys for the town, that there was not going to be an easement. And then the settlement agreements entered into. And then we come to find out that there are all undisclosed property rights. It was made very clear. Okay. I do understand the argument. Let me ask about your third point about your clients being involved at meetings with the FAA, meetings to bring the airport into compliance with FAA requirements. I understood that, in fact, the airport had achieved that even before the district court entered its order. So why isn't that issue removed? Well, there was a corrective action plan submitted by the town, but it did not. It was very important to my client to address certain concerns that they had about ongoing operations at the airport. And that they should have been included. I understand your point, Your Honor, but that they should have been included in those discussions. But what remedy can we give you on that now? That's a good question, Your Honor. I think that principally what we're advancing is that we should have been given a certain amount of TOFA restrictions, the TOFA removal from my client moving forward. That particular issue on the TOFA is particularly critical and relates to not only the failure of the town to abide by the settlement agreement to support the removal of the TOFAs, not just send a letter in support to the FAA. Counsel, that's time. You've made the argument well in your brief. Thank you. Can I ask one more question? Certainly. So, do you have any TOFA remedy available elsewhere at this point? Or is that matter completely settled? It's not settled. This is where it's problematic, Your Honor. The town was supposed to support the and impacts my client. So, not only, so under the settlement, they're supposed to support that. But in fact, what the town did was undermine that petition to the FAA by submitting a technical master plan to the FAA, which suggested that the town would prefer, in fact, to move those lines, I believe, to move those lines effectively into the ramp space being offered to my client and also down where his hangar is. So, it's really not in the spirit of what was agreed to for the town to tell the FAA, we support the removal of these TOFA markings. And then, on the other hand, also tell the FAA that not only do they not want them removed, but they actually want to push them and make them encroach into the lease space, into my client's hangar space. But is it resolved? It's not resolved, Your Honor. No. Is something pending? The FAA has not responded to the request by my client to remove the TOFAs. We don't know why they haven't responded. We could surmise that it likely is a result of a communication from the town, a technical master plan submitted to the FAA, which showed that they would rather increase the TOFA area than remove it. Counsel, once the FAA decides on this issue, does your client have an avenue of review of that decision? They may through the FAA. I'm not sure of that, Your Honor, and I apologize. Or perhaps under the Administrative Procedure Act, if you think it's arbitrary or capricious. Okay, thank you. You have your minute. Thank you. Attorney Lafleur, please mute your audio and video. Attorney Mackey, please unmute your audio and video. Introduce yourself for the record and proceed with your arguments, sir. Yes, good morning, Your Honors. David Mackey from Anderson and Krieger for the Defendants Appellees, Francis T. McGuire et al. I'll refer, just for convenience, to the multiple clients we have here as the town, if that's appropriate. I'd like to focus my presentation this morning, Your Honors, on two issues. One, the principal issue on appeal here involving enforcement of the lease provision in the settlement agreement is moot. And then secondly, even if it's not moot, that the district court, which has had this case for a long time, got it right when it summarily concluded that the leases ultimately offered by the town, and then of course later signed by BEA, satisfied the terms of the settlement agreement. Unless the court has questions with respect to the other claims for enforcement of the settlement agreement, I'm content to rely on my briefs. With respect to mootness, Your Honors, the July 30, 2019 settlement agreement between the parties required the town to offer a standard form, non-exclusive lease agreements with BEH. And there are two separate parcels that issue the West Apron and the DC-3 ramp at the Norwood Airport. And the central issue on appeal, as BEH styles it, is whether the leases offered by the town complied with that settlement agreement and whether the district court erred in concluding that they did in fact comply. But in our views, Your Honor, the court doesn't need to reach that central issue because shortly after the district court ruled that the leases offered by the town were compliant with the settlement agreement, and the day after BEH filed its notice of appeal, then BEH went ahead and signed the leases. And the executed leases which we moved to have included in the record and the court granted that motion, they contain an entire agreement provision. And for the record, the entire agreement between the parties with respect to the matter covered herein, which was... Go ahead, Judge Lange. The second settlement was about a set of other issues than the first one. I'm very dubious about your mootness argument. I realize that you have raised it and therefore we have an Article III obligation to address it, but I don't see how your entire agreement clause applies to the first agreement. Well, Your Honor, if I may, so the entire agreement clause in the executed leases specifically says that no other agreement shall be deemed to bind the parties with respect to the matter that's covered in the leases, and there's... Everything that was in the settlement agreement isn't covered by the lease. There are no doubt other issues in the settlement agreement aside from the lease provision, and we have not argued... I'm sorry, Your Honor. How can enforcement of the settlement agreement be moot if it covers issues that aren't covered by the lease? Because what we've... Let me follow up on what Judge Lange is saying. You and I have a deal. I'll give you two houses, and that's our deal. The next day, we sign a purchase and sale agreement for one of the houses, and it says it's the complete agreement. It's fully integrated and everything like that. That doesn't do away with your pre-existing obligation to give me another house, the two houses. What they're saying here is you agreed to give us a lease of some property, and they want to argue that standard form non-exclusive lease should be interpreted in this context as including something that's not encumbered in a way that defeats the purpose of using it. You then gave them a lease that is encumbered, so they got one of the houses, not both. Like Judge Lynch, I'm not too impressed with the mootness argument. What I am more interested in is did you promise them two houses or one in the first instance, i.e., did you promise them, should we read standard form non-exclusive lease as a lease that is not encumbered in the way that would impair its use? That seems to be the issue. All right. Well then, Your Honors, let me move off the mootness point then to address the meaning of the settlement agreement and the district court's interpretation of that. If the appeal from Judge Stern's denial of the motion to enforce the leasehold provision is not moot, then turn to our argument that the district court correctly interpreted the term non-exclusive. So BEH's claim is, in effect, the settlement agreement's leasehold provision requires leases to BEH free of encumbrances caused by others' rights of access across the property. But the problem is, again, the settlement agreement uses the term non-exclusive leases. The district court went right to the dictionary definition, a well-accepted tool of practical interpretation, to mean, well, non-exclusive means not limited to one party or organization. On top of that district court determination relied on by the court, we've cited two Massachusetts appeals court cases which deal with non-exclusive leases of this type. Probably the best one is the J&M hospitality case, which refers, the issue there was non-exclusive leases. But the subject matter of the negotiations was whether the appellants were going to be able to certain things had to be in place for that to take place. One of which is they needed a certain amount of rights, property rights, to space at the airport. So why wouldn't we look at what the meaning of non-exclusive, and first of all in the context of what was being negotiated, but also as far as was there a particular industry meaning to those words? Well, with respect to the particular industry meaning of those words, Your Honor. One other thing, in answering this, where it says standard form, whose form was it? It was the form of leases typically granted by the Norwood Airport, their standard form of lease. Who created the form? It was heavily negotiated between the parties, Your Honor. Well, those negotiations though, this is where you're losing me. As I understand it, you settled in December, you reached the settlement agreement, you have a term sheet, your client then prepared a settlement agreement and inserted in that settlement agreement a provision that there would be an easement. The lease would be subject to a leasement. The other side, when it bonkers, wouldn't agree to it, you have an impasse, you go and finally your client agrees to take out the easement. Now, I then look at the lease in standard form, non-exclusive lease. Given this record, it's hard to tell exactly what that means, but it would seem to be one thing that was clear, the parties agreed that there wouldn't be an easement. What's wrong with that argument? Your Honor, there isn't a reference to the easement ultimately, but the use of the term non-exclusive lease. Again, according to the dictionary definition, according to the J&M hospitality case, there's the Oliver case, two Massachusetts appeals court cases say, you've got a right to that property, but it's not exclusive. It is not. Wasn't the word non-exclusive in the draft that your client wanted to add the easement to? The word non-exclusive, I believe it was, Your Honor. Okay, so it was there and your client found, hey, we need to put in a provision giving us an easement. The other side said, no, we won't agree to that. Your client then comes in and announces that the town won't insist on the easement language. You sign the lease and you turn around and say, guess what? We don't need it because non-exclusive means that. That's what I'm hearing. Well, Your Honor, let me address Judge Thompson's question about what the term non-exclusive means in the airport context. We've cited an example of an FAA case that talks about non-exclusive rights to a ramp. This is not an unusual way that airports lease space on the ramp. An air carrier may have the ability to park its aircraft on the ramp. So why did your client want the easement language put into the agreement and was willing to have a half-year impasse over the settlement agreements on that point? Well, I think it initially had the easement language in, but ultimately at the end of the day, it was content with the term non-exclusive. Non-exclusive doesn't grant a specific property right in a flight level, but it does reflect that BEH's property right is subject to the rights of others to cross across the property. Airports with this ramp space won't work if air carriers are able to exclude other people from crossing across their ramp space. Counsel, that's time. Mr. Mackey, if I've understood your argument, what you're saying is we thought the term non-exclusive included the rights of others to cross over anything that was given. So we also tried to make that explicit belt and suspenders. We then decided, no, we don't need the suspenders. The belt alone is enough. And that belt is in conformance with industry practice. It is in conformance with standard forms. And there was no chicanery going on here. Everybody's pretty sophisticated. That, I think, is the argument you're making. Is that right? Yes, that's correct, Your Honor. You've articulated it very well. Can that be decided on summary, summarily, without fact-finding by the jury? Yes, Your Honor, we believe it can because we believe the use of the term non-exclusive is not ambiguous, as Judge Stearns found. I know that BEH has tried to raise this FAA grant assurance which uses the words exclusive rights. That is a completely inapplicable concept here. The FAA requires that airport sponsors not vest exclusive rights in the airport as a whole to a particular aeronautical provider. That has absolutely nothing to do with the concept of a non-exclusive lease. They're just completely different concepts and unrelated to one another. Mr. Mackey, you earlier said the way airports operate, of course there have to be easements. There's a limited amount of space. Other carriers at an airport need to be able to go across other space that perhaps is primarily occupied by a particular tenant. Was that argument, in fact, made to Judge Stearns? Your Honor, I have to look back at our briefs. I believe that in the briefs we filed in the Roadhouse case, it cited a situation where there was a lease for space on a ramp at an airport. The tenant said, yeah, but you can't let other planes cross back and forth across my lease space on the airport. The airport's response was, no, no, no. It says non-exclusive lease, and that means other planes can travel back and forth across the leasehold space. That is the way in which the FAA interpreted the lease provision in the Roadhouse case. The easement here isn't restricted to crossing back and forth over the land. It's actually to ease. The easement here, as I understand it, BEH is not contesting the fact that some people will be able to cross over its leased area. The easement, though, gives the flight level or whatever their name is more rights, necessary rights of passing to and from the space. Your Honor, I believe BEH is very much contesting the fact that other aircraft can cross back and forth. Let me put it this way. The easement gives more than the rights we're talking about here. The easement gives more than a right to just pass from point A to point B as need be. I don't believe that's the case. Okay. Is there some reason the easement wasn't recorded? Because in the process of doing their diligence, if it was a recorded easement, that's something they would have known when they were negotiating. Your Honor, to the point of what BEH knew, this issue about... Was it recorded? If not, why not? I don't know the answer to that question, Your Honor. Well, if I might, with respect to what BEH knew, there were seven months of... Isn't that recording customary? I believe it is, Your Honor. I'm sorry, I don't know why this easement was not recorded. No, I said, is it customary not to record an easement? I don't believe it is. All right. Mr. Mackey, I'll give you one minute to sum up. Okay. Your Honor, with respect to... Let me go back to this point about non-exclusive. The settlement agreement contains, as Judge Stearns found, an integration clause that barred on any previous agreements, statements, negotiations, previous iterations of the agreement, whatever they might be. It was negotiated by very sophisticated counsel on both sides, and ultimately what was signed in July of 2019 was the agreement that you have before you. The previous course of dealings between the parties, if an integration clause means anything, and surely it does with respect to a document negotiated heavily between two sophisticated parties represented by counsel, it's that the four corners of the agreement cover. With respect, the use of the term non-exclusive has a well-accepted dictionary meaning, has a meaning consistent, more than consistent, that is what the airport has advanced as its meaning, and we urge the court to affirm the district court's decision in that regard. Okay. Thank you. Thank you. Thank you, Attorney Mackey. Please mute your audio and video. Attorney Loeffler, please unmute your audio and video. And Attorney Loeffler, proceed with your one minute of rebuttal. Thank you, Your Honor. I just have a few brief points I'd really like to make. One, the court has before it the un-executed leases that were presented to us. You also have the executed leases. There is nothing in the leases themselves which suggests that the space is non-exclusive. The only language in the leases pertaining to exclusivity or exclusive rights, if you review the leases, relates to the airport's obligation to exclusive rights at the airport. There's nothing in the leases that there's no language at all. The phrase non-exclusive doesn't even appear in the leases, so it really belies their argument that the term non-exclusive was put into the settlement agreement in order to have non-exclusive leases. The leases aren't non-exclusive. Nonetheless, the inclusion of that language has materially and negatively impacted BEH's operations at the airport. Principally, if you read the settlement agreement there at the end, the town is supposed to support the building of infrastructure and hangars at the airport. That cannot be done with these claimed rights and encumbrances. Counsel, that's time. Where would you point us to in the record that would show that the easement prohibits you from building those structures? I apologize, Your Honor. I don't have it right in front of me. I know that perhaps in the affidavit of Christopher Dunneman, he's outlined how that's impacted and how it's effectively prevented him from building infrastructure. Secondly, the inclusion, Judge Stern's order interpreting that phrase non-exclusive, has embroiled and the town's failure to disclose these claimed rights by third parties and encumbrances has embroiled BEH in litigation. It's in the record that shortly after the settlement agreement was signed, flight level BEH's competitor, which by the way, has a vast majority of the ramp space at this airport. BEH has a small, small fraction of ramp space at the airport. They sued BEH in the town, claiming these third parties, these rights to the particular ramp space, which has impacted BEH's operations. Counsel, yes, you do have other litigation. Other issues will be resolved in that litigation. We just have the issues before us. And, you know, there is something to the point that sophisticated counsel here agreed on a standard form, non-exclusive. And if you had wanted something else, you could have chosen other language and protected yourself. Correct? Uh, well, from BEH's perspective, um, the, the, given the events leading up to the execution of the settlement agreement and, and its interpretation. And why didn't you insist on the word exclusive if that's what you wanted? I think that your honor, it was, it was clearly understood by the parties that they were going to have unfettered access to this ramp space to conduct their FBO operations. And to the exclusion of everyone else. Well, well, it's, it's to the exclusion. That would easily have been taken care of by insertion of the word exclusive instead, non-exclusive gets used. Well, I understand the point your honor's making, but the BEH's, and I think the correct interpretation of that phrase in the settlement agreement relates to the FAA grant insurance obligations. Okay. Okay. Thank you. Unless my colleagues have further questions, any further questions? No. Okay. Um, thank you, uh, counsel for both sides. Well argued. Thank you. Um, the court is going to take a three minute recess before the next case. Okay. Thank you, Judge Lynch. IT, please stop the audio stream.